**COLORADO STATE PERSONNEL BOARD, Petitioner–Appellee,**

v.

**DEPARTMENT OF CORRECTIONS, DIVISION OF ADULT PAROLE SUPERVISION, Petitioner–Appellant.**

No. 98SC339.

Supreme Court of Colorado, En Banc.

Sept. 20, 1999.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Linda L. Siderius, Deputy Attorney General, Richard Djokic, First Assistant Attorney General, Kristin F. Rozansky, Assistant Attorney General, Regulatory Law Section, Denver, Colorado, Attorneys for State Personnel Board.

Paul Farley, Deputy Attorney General, John August Lizza, First Assistant Attorney General, Diane Marie Michaud, Assistant Attorney General, State Services Section, Denver, Colorado, Attorneys for Department of Corrections.

Justice HOBBS delivered the Opinion of the Court.

The State Personnel Board (Board) and the Department of Corrections (DOC) challenge the court of appeals' order dismissing without prejudice DOC's appeal of the Board's order awarding attorney fees against it.[1] *See Toothaker v. Department of Corrections,* No. 97CA1970 (Colo.App. Mar. 19, 1998) (order partially dismissing appeal without prejudice). The court of appeals determined sua sponte that it lacked jurisdiction over the attorney fee issue because the Board had not yet determined the amount of the award. The underlying case is DOC's appeal from the Board's order setting aside a disciplinary sanction imposed against DOC employee James Toothaker (Toothaker). We reverse the order of the court of appeals, and we reinstate DOC's appeal of the Board's order awarding attorney fees to Toothaker.

## I.

The facts are these. An administrative law judge (ALJ) conducted a hearing in conformity with the Administrative Procedures Act (APA), section 24–4–105, 7 C.R.S. (1999) (setting out procedures for agency adjudicatory proceedings); section 24–50–125, 7 C.R.S. (1999) (prescribing disciplinary hearing procedures before the Board); and section 24–50–125.4, 7 C.R.S. (1999) (specifying appeal procedures from an ALJ to the Board and from the Board to the court of appeals).

On April 22, 1997, the ALJ issued an initial decision reversing a five-day disciplinary suspension that the DOC had imposed on one of

---

1. We granted certiorari on two issues:

(1) Whether the court of appeals erred as a matter of law by entering an order not in accord with this court's decision in *Baldwin v. Bright Mortgage Co.,* 757 P.2d 1072 (Colo.1988), and which conflicts with the decisions of all other divisions of the court of appeals.

(2) Whether the court of appeals failed to give proper deference to the Board's own interpreta-

tion of its organic act, namely, that a final agency order awarding attorney fees to a party, but not establishing the fee amount, constitutes a "final decision" of the Board under section 24–50–125.4, as well as the APA, section 24–4–106, subject to appellate review under section 24–50–125.4(3).

its classified employees, Toothaker. The ALJ concluded, as a matter of law, that the DOC had not proven that Toothaker committed the acts for which he was disciplined; that the discipline imposed was not within the range of alternatives available; that the DOC's action was "arbitrary, capricious, or contrary to rule or law"; and that Toothaker was therefore entitled to an award of his reasonable attorney fees and costs. *See* § 24–50–125.5(1), 7 C.R.S. (1999).[2]

The DOC appealed the initial decision to the Board. *See* § 24–50–125.4(4). On September 23, 1997, the Board adopted the ALJ's findings and conclusions of law and affirmed the initial decision. In particular, the Board agreed that the DOC's disciplinary action was "arbitrary, capricious, or contrary to rule of law." The Board further affirmed the order for an award of attorney fees, but did not review any matter involving the amount thereof, consistent with its long-standing practice that it could approve a final order for award of attorney fees even though the amount thereof had not been determined.

On November 7, 1997, the DOC filed a notice of appeal to the court of appeals from the Board's September 23 order. The appeal challenged both the reversal of the imposition of discipline and the order for an award of attorney fees against the DOC. On January 30, 1998, the court of appeals sua sponte issued an order for the DOC to show cause why the attorney fee appeal should not be dismissed for lack of a final appealable order. Responding to that court's show cause order, the DOC contended that, "A final judgment on the merits is appealable regardless of any unresolved issue of attorney fees." The response also asserted that:

> The historical and typical procedure of appeals from orders entered by the State Personnel Board has been to proceed with the appeal prior to the entry of a specific amount of attorney fees. Numerous recent appeals have been decided by this Court on the issue of an award of attorney fees prior to the entry of a specific amount.

After considering the DOC's response, the court of appeals entered an order "concluding that the amount of attorney's fees must be set before the award is appealable." *Toothaker v. Department of Corrections*, No. 97CA1970 (Colo.App. Mar. 19, 1998) (order partially dismissing appeal without prejudice).

The Board and the DOC urge us to set aside the court of appeals' dismissal order and to reinstate the DOC's appeal from the Board's attorney fee order. Though no party to the case has taken a contrary position, we have undertaken to review and decide the certiorari issues as if they were fully contested. Based on the Board's statutory authority and its long-standing interpretation thereof, we agree that the court of appeals should not have severed the attorney fee issue from the remainder of the appeal.

## II.

We agree with the Board and the DOC that the court of appeals, under the Board's statute, has jurisdiction to review a Board order awarding attorney fees, despite the fact that the amount thereof remains to be determined.

### A.

#### *Deference to Agency's Reasonable Interpretation*

In this case, the Board adhered to its policy of treating orders reviewing ALJ deci-

---

2. Section 24–50–125.5(1) provides in part:

   Upon final resolution of any proceeding related to the provisions of this article, if it is found that the personnel action from which the proceeding arose or the appeal of such action was instituted frivolously, in bad faith, maliciously, or as a means of harassment or was otherwise groundless, the employee bringing the appeal or the department, agency, board, or commission taking such personnel action shall be liable for any attorney fees and other costs incurred by the employee or agency against whom such appeal or personnel action was taken, including the cost of any transcript together with interest at the legal rate. Reimbursement of such attorney fees and other costs shall be made by the employee or department, agency, board, or commission upon presentation by the employee or agency of a statement of the attorney fees and other costs incurred which has been approved by the state personnel board, and any such claim approved by the state personnel board against an agency shall be a charge on moneys appropriated to the department, agency, board, or commission.

sions as "final decisions" for purposes of judicial appellate review. The Board's policy reflects its view of the statute defining its authority over ALJs and time limitations applicable thereto. *See* § 24–50–125.4(4)(providing for Board's "final decision within ninety days after the record has been certified" from the ALJ). In reviewing the Board's statutory interpretation, we rely on basic rules of statutory construction. If the statutory language is clear, we apply it as written. *See Colorado State Bd. of Accountancy v. Raisch*, 960 P.2d 102, 107 (Colo.1998). If the statutory language is ambiguous or unclear, we consult other rules of statutory construction. *See A.B. Hirschfeld Press, Inc. v. City & County of Denver*, 806 P.2d 917, 920 (Colo. 1991).

▪ Although we review all matters of law de novo, we will defer to the agency's construction when the statute may be given more than one reasonable interpretation and the agency has employed its expertise to select a particular interpretation. *See City of Aurora v. Board of County Comm'rs*, 919 P.2d 198, 203 (Colo.1996). Here, the statutory language is not clear and it does not compel a singular interpretation. Section 24–50–125.4 establishes the relevant appeals process and section 24–50–125.5 provides for recovery of attorney fees in the case of a personnel action taken in bad faith. Neither provision identifies the point at which the amount of such fees should be quantified or defines the effect that an absence of such a dollar amount should have on the process.

Because the organic statute is unclear on this point, we should "consider and give appropriate deference to the contemporaneous and consistent interpretation of a statute made by a governmental entity charged with its interpretation or enforcement." *City of Aurora*, 919 P.2d at 203. After evaluating the Board's rationale, we defer to its reasonable interpretation. It is charged with enforcement of the appeals process at issue, and it has consistently construed its statute as requiring it to notify parties of the right to appeal from an order awarding attorney fees, even though the amount of the award has not been determined.

## B.

### *Personnel Board's Reasoning*

Our prior cases arise in the context of court-awarded attorney fees and do not address the precise matter before us. *See Baldwin v. Bright Mortgage Co.*, 757 P.2d 1072, 1073–74 (Colo.1988). The Board asserts that the public policy interest in providing efficient administrative adjudication supports its construction of the statute. Specifically, if attorney fees must be quantified before judicial review of an award order by the agency, the Board must first remand each decision approving such an award to the ALJ. This would occur because the fee amount would include both the proceedings before the ALJ and the appeal from the ALJ to the Board. The ALJ's calculation could then be appealed to the Board; thus, the ALJ and the Board would be reviewing an aspect of the case twice before judicial appellate review of it would lie in the court of appeals.

If the court of appeals affirmed the award, there would remain a calculation of additional attorney fees for the court process; the case would again return to the Board and thence to the ALJ for determination of the additional fees. If, on the other hand, the award were to be overturned at some point in the process, any prior effort to quantify fees would constitute a waste of resources.

The Board's desire to avoid inefficiencies in the adjudication process is supported by the statute's language and our cases. First, the General Assembly expressly stated that "[i]t is the duty of the state personnel board to provide fair and *timely* resolution of cases before it," § 24–50–101(3)(b) (emphasis added), and the provision at issue requires prompt resolution of appeals. *See* § 24–50–124.5(4) (requiring Board decision within ninety days after certification of the record from the ALJ). Handling personnel actions promptly and fairly promotes the efficient functioning of state government.

Second, in the analogous context of deciding the relationship between attorney fee awards and the substantive merits of a claim for purposes of jurisdiction, this court has relied on notions of judicial economy in de-

termining that a county court properly treated attorney fees as "costs." *See Ferrell v. Glenwood Brokers, Ltd.,* 848 P.2d 936, 940 (Colo.1993). In *Ferrell,* the defendant argued that attorney fees should have been included in damages, with the result that the judgment for the plaintiff would have exceeded the county court's then-existing $5000 jurisdictional limit and required transfer to the district court. In rejecting this argument, we ruled that "[i]mplementing such a rule would be a waste of judicial resources" because "[t]wo, rather than one, courts would be required to process the same case before it was resolved." *Id.* These are precisely the kinds of concerns that motivated the Board's construction of what constitutes a "final decision" for review in the court of appeals pursuant to section 24–50–125.4.

■ We give deference to an agency's reasonable interpretation of its statute that will assist in lightening the agency's workload and making its decision-making process more efficient, provided that its interpretation is consistent with the intent and purpose of the General Assembly in enacting the statute. *See Industrial Claim Appeals Office v. Orth,* 965 P.2d 1246, 1254 (Colo.1998) (approving agency construction of settlement authority of a Prehearing ALJ). It is true that the Board's construction of the statute occasionally might lead to two appeals rather than one, an evident and understandable concern of the court of appeals. However, whether the *amount* of an attorney fee award is more likely to generate additional litigation than the *fact* of an award is a reasonable question. Based on its experience with personnel actions year in and year out, the Board concluded that the inefficient use of administrative and judicial resources is more likely to occur if the amount of an attorney fee award must be determined before a party can seek judicial review of that award.

We do not regard the agency's view in this matter as invading the role of the judiciary or the exercise of judicial expertise; thus, we disagree with the reasoning of the court of appeals in *Workman v. Colorado Department of Corrections,* 988 P.2d 1143 (Colo.App.1999) (ruling that the question of whether an agency action is final for purposes of appellate review is consigned to judicial rather than administrative compe-

tence or expertise). Expertise often derives from experience. In the present case, the Board's judgment regarding the more efficient process for addressing agency-awarded attorney fees is supported by administrative and judicial experience. In Colorado, attorney fee awards have been available for improper state personnel actions since 1979. *See* An Act Concerning Recovery of Expenses Incurred Resulting from Improper State Personnel Actions, ch. 245, 1979 Colo. Sess. Laws 949–50.

Our research discloses that, since the law's enactment, there have been twenty-one published appellate cases addressing attorney fee awards under this statute. Every one of these cases involved the issue of whether or not a party was entitled to receive attorney fees, and the vast majority have been resolved at the court of appeals level. *See, e.g., Alexander v. Colorado Dep't of Personnel,* 952 P.2d 814 (Colo.App.1997); *Halverstadt v. Department of Corrections,* 911 P.2d 654 (Colo.App.1995); *Ornelas v. Department of Insts.,* 804 P.2d 235 (Colo.App.1990). Not a single case has raised a dispute regarding the *amount* of an attorney fee award. In this context, the court of appeals' order of dismissal may create a problem where none exists.

Ordinarily, the parties to a personnel action will strongly contest whether an employer-agency acted in bad faith under the statutory standard for the award of attorney fees. *See, e.g., Lanes v. O'Brien,* 746 P.2d 1366, 1374 (Colo.1987) (finding that plaintiff was entitled to reinstatement and back pay but reversing Board's award of attorney fees because personnel action had not been frivolous or in bad faith). On the other hand, the amount of attorney fees awarded is a factual determination. Usually, if an order for the award of fees is upheld, the parties can agree on the reasonable amount thereof; in the instance of an appeal, the reviewing court would rarely, if ever, set aside the Board's decision regarding the amount owed. *See, e.g., Tunget v. Board of County Comm'rs,* No. 97CA1327, slip op. at 5, —— P.2d ——, ——, 1999 WL 417878 (Colo.App. June 24, 1999) (finding that reasonableness of the amount of an award is a question of fact for

the trial court and will be overturned only if "patently erroneous"). Requiring the amount of attorney fees to be set before the order for the award can be appealed judicially creates a costly extra step that will not serve the statutory design.

*Baldwin* does not dictate a contrary result. *Baldwin* holds that an appeal on the merits is separate from the issue of attorney fees, and that a judgment on the merits is final and appealable regardless of whether an attorney fee award is final or not. In reaching this conclusion, we agreed with the reasoning of *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), where the U.S. Supreme Court held that a lower court decision on the merits is a final decision for purposes of appeal " 'whether or not there remains for adjudication a request for attorney's fees attributable to the case.' 108 S.Ct. at 1722." *Baldwin*, 757 P.2d at 1073. We concluded in *Baldwin* that "a bright line rule that a decision on the

merits is a final judgment for appeal purposes despite any outstanding issue of attorney fees is necessary and appropriate." *Id.* at 1074. We therefore held "that a *final judgment on the merits* is appealable regardless of any unresolved issue of attorney fees." *Id.* (emphasis added). *Baldwin* did not specify what is necessary for an attorney fee award to be final and appealable in its own right.[3]

### III.

Accordingly, we reverse the court of appeals order that severed the DOC's appeal of the Board's attorney fee award order from the other issues on appeal in this case. We remand this case with instructions that the court of appeals consider the entirety of the DOC's appeal of the Board's decision.

---

**3.** We restrict our decision in this case to the Board's statute, in reliance on its reasonable interpretation. We reserve judgment as to whether court-awarded attorney fees may be appealed before the amount of the award has been fixed, because that issue is not before us in this case.